**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence J. Warfield, as Trustee for Osborn Scientific Group, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>Advnt Biotechnologies, LLC, et al.,<br><br>    Defendants.<br>_____<br>Advnt Biotechnologies, LLC, an Arizona limited liability company,<br><br>    Cross-Claimant,<br><br>vs.<br><br>Robert C. Bohannon, Nancy Bohannon, husband and wife; Martin Schroeder, Ann Schroeder, husband and wife; The Emmes Group, Inc., a corporation,<br><br>    Cross-Defendants.<br>_____ | No. CIV-06-0904-PHX-DGC<br><br>**ORDER** |

Lawrence J. Warfield ("Plaintiff"), trustee in bankruptcy for Osborn Scientific Group, Inc. ("OSG"), has filed a partial motion for summary judgment against Advnt Technologies, Inc. ("Advnt"). Dkt. #10. Advnt has filed a cross-motion for summary judgment. Dkt. #20. Robert and Nancy Bohannon, Martin and Ann Schroeder, and the

Emmes Group, Inc. (collectively "Cross-Defendants") have filed motions to strike or dismiss Advnt's third-party claims against them. Dkt. ##15, 24. Advnt has filed two motions to amend its complaint to dismiss third-party claims against Cross-Defendants and to add cross-claims against them. Dkt. ##31, 46. The Court has reviewed the memoranda filed by the parties. Dkt. ##10, 15, 16, 20, 24, 31, 32, 37, 38, 43, 44, 46, 52, 55. The Court will deny summary judgment to Plaintiff and Advnt, grant Cross-Defendants' motions to strike third-party claims, and deny Advnt's motion to add cross-claims against Cross-Defendants.

**I. Background.**

OSG operated from 1999 to 2003, selling detection kits for infectious diseases and biowarfare agents. Dkt. #17, ¶ 2, 7. Specifically, the biowarfare section of OSG sold Biowarfare Agent Detection Devices ("BADD") consisting of tests for anthrax, ricin, and botulinum. *Id.* at ¶ 10. By the autumn of 2003, OSG was encountering severe financial difficulties and was facing bankruptcy. *Id.* at ¶¶ 3, 5-6, 8-9. OSG's owner, Dan Faubion, engaged in discussions with Tim Scherkenback concerning the sale of the biowarfare business. *Id.* at ¶ 10. On October 22, 2003, OSG entered into an Inventory Purchase Agreement ("IPA") with Advnt, a newly formed company owned by Scherkenback. *Id.* at ¶ 13. The IPA specifically transferred OSG's assets of (1) raw materials, (2) antigens, antibodies, reagents, (3) cell lines, (4) finished goods, and (5) goats. *See* Dkt. #10, Ex. D. The contract did not explicitly transfer OSG's trademarks or intellectual property. *Id.* The total sale price was $50,000. Dkt. #17, ¶ 30. Plaintiff contends that OSG sold the assets at a low price to satisfy a $266,000 debt it owed to Scherkenback. *See* BK-03-21672-PHX-GBN, Dkt. #1, ¶¶ 104-107. On December 11, 2003, OSG was placed in an involuntary Chapter 7 bankruptcy proceeding. *Id.* at ¶ 2.

On January 18, 2006, Plaintiff filed a twenty-count complaint against Advnt and numerous other parties. Plaintiff has moved for partial summary judgment against Advnt on the following counts:

**Count VII:** Unfair Competition, False Designation of Origin, and False Advertising under 15 U.S.C. § 1125(a).

1  **Count VIII:** Trade Dress Infringement under 15 U.S.C. § 1125(a).

2  **Count XI:** Counterfeiting under A.R.S. §§ 44-1453 and 44-1456.

3  **Count X:** Unfair Competition under Common Law.

4  **Count XI:** State Trademark Dilution under A.R.S. § 44-1448.01.

Dkt. #1 at 27-41.

## II. Legal Standard for Summary Judgment.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Discussion.

### A. Plaintiff's Motion for Summary Judgment.

Plaintiff has moved for summary judgment on Counts VII through XI of its complaint. Dkt. #10. The common thread among these counts is that they all stem from Advnt's allegedly unauthorized use of OSG's former trademarks, especially the "BADD" moniker, trade dress, intellectual property, and good will, and other intangible assets of the biowarfare section of OSG. Plaintiff analyzes the relevant legal factors for each count, attempting to show that Advnt's continued marketing of OSG's products satisfies each factor. *Id.*

Advnt admits that its continued use of OSG's trademarks and intellectual property constitutes clear infringement if Advnt lacks the right to use such assets. Dkt. #16 at 6. Advnt argues, however, that it properly purchased OSG's trademarks and intellectual property through the IPA. *Id.* The Court must therefore determine whether the facts, taken

- 3 -

1 in the light most favorable to Advnt, could support a finding that the IPA transferred 2 intellectual property and trademark rights in OSG's biowarfare products. If so, summary 3 judgment must be denied.

4 Advnt cites cases holding that intellectual property, trademarks, and associated good 5 will are presumed to be included in the sale of an entire business. *See, e.g. American Sleek* 6 *Craft, Inc. v. Nescher*, 131 B.R. 991, 996-97 (D. Ariz. 1991). These cases are distinguishable 7 from this case, however, because the sale of inventory from OSG's biowarfare business did 8 not involve the transfer of an entire business. The IPA listed only five specific types of 9 assets that were sold. Dkt. #10, Ex. D. Neither the infectious diseases branch of the business 10 nor the laboratory equipment was included in the sale to Advnt.

11 Plaintiff cites cases for the proposition that a partial sale of a company does not 12 include an implied transfer of trademarks or good will. *See Grace Bros., Inc. v. Comm'r*, 173 13 F.2d 170, 175 (9th Cir. 1949); *Emachines, Inc. v. Ready Access Memory, Inc.* 2001 WL 14 456404, at *12 (C.D. Cal. 2001). While Plaintiff is correct that a sale of inventory may not 15 automatically result in an implied transfer of a trademark or accompanying good will, 16 Plaintiff's cases do not hold that trademarks or intellectual property may never be transferred 17 in a partial sale of assets.

18 In the absence of controlling case law, the Court must examine principles of contract 19 law. Arizona has an expansive view of contract construction that allows a court to look 20 beyond the four corners of a contract to discern the intention of the parties. *See Taylor v.* 21 *State Farm Mutual Automobile Ins. Co.*, 854 P.2d 1134, 1139-40 (Ariz. 1993). A court's 22 "primary objective" is "to enforce the contract as intended by the parties." *Id.* at 1140. To 23 do so, "[a] court may consider surrounding circumstances, including negotiation, prior 24 understandings, and subsequent conduct" to determine the parties' intent. *Id.* at 1139 (citing 25 *Darner Motor Sales, Inc., v. Universal Underwriters Insurance Co.*, 682 P.2d 388, 398 (Ariz. 26 1984)). This process may result in the recognition and enforcement of terms that do not 27 explicitly appear in the contract as long as there is no contradiction by the written words of 28 the contract. *Id.*

Under *Taylor*, a court must first consider extrinsic evidence that is alleged to illuminate contract language or demonstrate the parties' intent. *Id*. Next, the court must examine the contract language to determine if it is reasonably susceptible to a meaning that is not apparent on its face. *Id*. at 1140.

Here, there is no question that the IPA lists only five types of inventory. Dkt. #10, Ex. D. Advnt contends, however, that the IPA contains language that evinces OSG's intent to sell all trademarks and intellectual property of the biowarfare business. The IPA describes four of the five types of inventory sold as that "used in the manufacture of rapid biowarfare detection products." *Id*.; Dkt. #43 at 3-4. Advnt argues that this language reflects that the IPA transferred the entire biowarfare business. Dkt. #43 at 4. Additionally, Advnt notes that Faubion stated in his deposition that he intended to sell "whatever materials attached to biowarfare to Advnt in that purchase price. I would not retain any element of biowarfare." Dkt. #17, ¶ 14, Ex. 1.

Plaintiff counters by citing evidence that OSG received a loan from Wells Fargo Bank in late 2003 and stated in its proposed plan of repayment that it would repay the loan by licensing biowarfare technology to Advnt. Dkt. #32, Ex. B. Plaintiff claims that this repayment plan "demonstrates unequivocally that the intellectual property was not sold, but rather, was retained by OSG to be licensed to Advnt in order to generate income." Dkt. #32 at 3. The Court notes, however, that there is no definition of the word "technology" in the proposed plan of repayment, so it is unclear if "technology" encompasses the trademarks and intellectual property that are at issue in this case. OSG could also have misrepresented its ability to repay the federal loan. The mere reference to technology in the repayment plan does not unequivocally show that trademarks and intellectual property were not part of the IPA.

Viewing the evidence in the light most favorable to Advnt, a reasonable jury could find the contract susceptible to the interpretation that it conveyed OSG's entire interest in the biowarfare business to Advnt. Therefore, the Court will deny Plaintiff's motion for summary judgment.

- 5 -

**B. Advnt's Cross-Motion for Summary Judgment.**

Advnt requests summary judgment on all but Count I without providing any evidence or meaningful argument to support its position. The Court will deny summary judgment on Counts II through XX.

The lone count for which Advnt provides more than a cursory request for summary judgment is Count I, which alleges preference in the sale of biowarfare inventory to Advnt. Dkt. #16 at 9-10; *see also* BK-03-21672-PHX-GBN, Dkt. #1 at 22-23. Advnt's argument is that even if the IPA were preferential, the price was reasonable and thus should not be regarded as a preference. Dkt. #16 at 9. Advnt claims that Faubion's testimony that OSG's sales were low and the company had no potential purchasers other than Advnt further demonstrates that the sale was not a preference. *Id*. at 10. The reasonableness of the purchase price, however, is a factual question that cannot be resolved on summary judgment. Moreover, this argument, for which Advnt cites no legal authority, does not resolve all questions of fact regarding whether the sale constituted a preference under the relevant bankruptcy statute, 11 U.S.C. § 547. Accordingly, the Court will deny Advnt's motion for summary judgment.[1]

**C. Motions Regarding Third-Party Claims and Cross-Claims.**

In its answer to OSG's complaint, Advnt asserted third-party claims against OSG's former chief scientist, Robert C. Bohannon, and against OSG's former investment banker, Martin Schroeder and The Emmes Group, Inc. *See* BK-03-21672-PHX-GBN, Dkt. #14 at 26-31. Advnt alleges that Bohannon is liable for tortious interference with contract and conversion for removing or altering the formulas for the biowarfare testing solutions. *See* BK-03-21672-PHX-GBN, Dkt. #1 at 27-29. Advnt alleges that Schroeder, working for the Emmes Group, is liable for tortious interference with contract for falsely stating that other companies had offered far more than Advnt for a stake in OSG. *Id*. at 30-31; Dkt. #31 at 3.

---

[1] Advnt also argues that the contract principles of accord and satisfaction and waiver somehow preclude Plaintiff's entire suit. The Court finds that these issues do not provide a basis for summary judgment.

- 6 -

Both Cross-Defendants filed motions to strike or dismiss the third-party claims. Dkt. #15, 24. They argue that Advnt's claims against them are outside the scope of Federal Rule of Civil Procedure 14. Rule 14 provides that a defendant may bring a third-party claim against "a person not a party to the action who is or may be liable to the [defendant] for all or part of the plaintiff's claim against the [defendant]." Fed. R. Civ. P. 14(a). Cross-Defendants argue that because Advnt's potential liability to OSG could not be transferred to them, they are not proper third parties under Rule 14. *See Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988).

Conceding the correctness of Cross-Defendant's position, Advnt now moves to dismiss the third-party claims and instead to add Cross-Defendants to the suit as cross-defendants. Dkt. #31 at 4. Advnt filed a first motion to add cross-claims, to which Cross-Defendants responded. Dkt. ##31, 37, 38. Advnt then withdrew this motion and filed a second motion to add cross-claims, alleging additional facts that would support diversity jurisdiction. Dkt. #46. Cross-Defendants responded to this second motion. Dkt. ##49, 52.

Cross-Defendants argue that Federal Rule of Civil Procedure 13 does not allow Advnt to bring a cross-claim against them. Dkt. ##37, 38. Because Cross-Defendants are not currently parties to the suit, any cross-claim asserted against them must comply with the requirements of Rule 13(h). Rule 13(h) has been interpreted to mean that "a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action." 6 Charles A. Wright, et al., *Federal Practice & Procedure* § 1435 (2d ed.); *Speer v. JBJ Electric Co.*, No. Civ-04-2110-PHX-MHM, 2006 U.S. Dist. LEXIS 16350, at *7-8 (D. Ariz. 2006) (dismissing a counterclaim directed toward a new party and existing plaintiff when the existing plaintiff was nominally included for the sole purpose of complying with Rule 13(h)). The only counterclaim Advnt brings that involves an existing party is a breach of contract claim against Plaintiff. *See* BK-03-21672-PHX-GBN, Dkt. #14 at 25-26. Advnt does not seek to join Cross-Defendants to this counterclaim. Rather, it directs cross-claims solely against Cross-Defendants.

Although Advnt argues in its second proposed cross-claim that the Court has diversity jurisdiction over Cross-Defendants, the Court will not consider this issue because Advnt may not bring the cross-claims under Rule 13. Dkt. #46.[2] As Bohannon acknowledges, if Advnt wants a court to exercise diversity jurisdiction over its claims against Bohannon and Schroeder, "then Advnt may attempt to do so in a separate action, wherein the [Cross-Defendants] can properly challenge Advnt's jurisdictional allegations." Dkt. #49 at 5. Because the proposed cross-claims are directed solely against parties not currently in the lawsuit, the Court will deny Advnt's motion to add cross-claims.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Dkt. #10) is **denied**.

2. Defendant's cross-motion for summary judgment (Dkt. #20) is **denied**.

3. Cross-Defendants' motions to strike third-party claims (Dkt. ##15, 24) are **granted**.

4. Defendant's first motion to add cross-claims (Dkt. #31) has been withdrawn and therefore is **denied**.

5. Defendant's second motion to add cross-claims (Dkt. #46) is **denied**.

DATED this 9th day of November, 2006.

David G. Campbell
United States District Judge

---

[2] In replies on both the first and second motions to add cross-claims, Advnt fails to address arguments by Cross-Defendants that cross-claims are not allowed against new parties alone. Dkt. ##44, 55. Instead, Advnt urges the Court to exercise supplemental jurisdiction by citing a case in which supplemental jurisdiction on a counterclaim was permitted after the counterclaim was also made against an existing party. *See State National Ins. Co., Inc. v. Yates*, 391 F.3d 577 (5th Cir. 2004). Supplemental jurisdiction is an irrelevant issue if Advnt cannot meet the threshold requirements of Rule 13.